# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### No.: 7:23-cv-01660-BO-RN

DEBORAH RUFFIN, Individually and on Behalf of all Others Similarly Situated,

                Plaintiff,

v.

CVS Pharmacy Inc.,

                Defendant.

**AMENDED CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

## <u>AMENDED CLASS ACTION COMPLAINT</u>

Plaintiff Deborah Ruffin (Plaintiff"), on behalf of herself and all others similarly situated bring this Class Action Complaint ("CAC") against CVS Pharmacy Inc. ("Defendant" or "CVS"), and, in support, states the following:

## <u>NATURE OF THE SUIT</u>

1. Plaintiff brings this action on behalf of herself and all others similarly situation who purchased Defendant's over-the-counter lubricating eyedrop products and multi-action relief eye drops ("Products") that were manufactured, marketed, labeled, distributed, and sold by the Defendant.[1] The above-described group of persons who purchased Defendant's Product are to be referred to as the Punitive Class ("Class" or "Class Members") hereinafter.

2. The Products are designed to lubricate the user's eyes by relieving dryness and the complications therein. The Products are designed to be sterile and safe for use in the human eye.

---

[1] https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-certain-eye-drops-several-major-brands-due-risk-eye#eyedrops

3. However, the Products are not safe and are dangerous to use because they have been contaminated with bacteria that, when put into a person's eye, can cause potential risk of eye infections that could result in partial vision loss or blindness.

4. Plaintiff purchased Defendant's Lubricant Eye Drops 10 ml (single pack) (Propylene Glycol Eye Drops 0.6%) product expecting safe and useable relief for her eye after going through eye surgery.

5. As a result of Defendant's actions and omissions, Plaintiff has been denied her benefit of the bargain by being provided a product that is unsafe and dangerous to use in its intended manner.

6. Plaintiff brings this action because of Defendant's negligence, unjust enrichment, manufacturing defect, design defect, breach of contract, and breaches of North Carolina consumer protection statutes.

7. Defendant is a Rhode Island based retail pharmacy chain.

## JURISDICTION AND VENUE

8. This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class, including Plaintiff, who are citizens of States diverse from Defendant, and (4) there are more than 100 Class Members.

9. This Court has Personal Jurisdiction over Defendant because Defendant has sufficient minimal contacts with this District. Defendant has purposefully availed itself to this Jurisdiction through its marketing, sale, advertising, and promotion of its Products and retail stores throughout this Jurisdiction.

2

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Defendant transacts its business in this District, and a sustainable part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

## PARTIES

### PLAINTIFF

11.     Plaintiff is a citizen and resident of Carolina Beach, North Carolina, located within New Hanover County, North Carolina.

12.     On October 4, 2023, Plaintiff had eye surgery due to the fact her eyelid would not close all the way. The eye surgery was to tighten up the muscles in her eyelid. To help give her relief after the surgery, Plaintiff purchased CVS Health Lubricant Eye Drops 10 ml (single pack) (Propylene Glycol Eye Drops 0.6%) from her local CVS Pharmacy located in Carolina Beach, North Carolina.

13.     Plaintiff purchased the Product because she believed it to be safe, effective, and trustworthy due to its placement in the retail store and based on the packaging and labeling of the Product.

14.     Plaintiff, along with many others, have spent countless dollars on these dangerous Products with the expectation that they will safely relieve ocular discomfort.

15.     If the dangerous nature of Defendant's product was known, Plaintiff would not have purchased the Product.

### DEFENDANT

16.     Defendant is a Delaware corporation, with its principal place of business located at 1 CVS Drive, Woonsocket, Rhode Island, 02895.

17.     Defendant CVS Pharmacy Inc. is a subsidiary of CVS Health Corporation.

18.     Defendant is a provider of healthcare and retail pharmacy services. Defendant offers prescription medications, healthcare and wellness products, beauty products, and personal care products.

## FACTUAL ALLEGATIONS

*The Products*

19.     The NDC, or National Drug Code, number for the Products are: 76168-702-15, 76168-702-30, 76168-704-15, 76168-704-30, 76168-706-15, 76168-712-10, 76168-714-10, 76168-714-20, and 76168-711-15.

20.     The October 27, 2023 Recall applies to lubricating drops sold by six companies, including CVS Health, Target, Rite Aid and Cardinal Health.[2]

21.     FDA inspectors found unsanitary conditions and bacteria at the facility producing the drops, however, the FDA did not disclose the location of the factory or when it was inspected.[3]

22.     The agency asked the companies to recall their products because FDA inspectors found unsanitary conditions and bacteria at the facility producing the drops. The FDA did not disclose the location of the factory or when it was inspected.[4]

23.     This comes on the heels of another serious recall in February of 2023 wherein the CDC investigated a certain company's eye drops and found a rare anti-biotic resistant bacteria.[5]

---

[2] https://www.cnbc.com/2023/10/30/eyedrops-from-cvs-rite-aid-and-others-carry-possible-infection-risk-fda-says.html
[3] *Id.*
[4] *Id.*
[5] https://ezricare-info.com/

4

24.     Still, with such notice, Defendant failed to protect the integrity of its products by operating or producing its products in unsafe and unsanitary conditions.

*The Recall of the Products*

25.     On October 25, 2023, the U.S. Food and Drug Administration (FDA) recommended the manufacturers to recall all lots of 27 over-the-counter eye drop products after agency investigators found insanitary conditions in the manufacturing facility and positive bacterial test results from environmental sampling of critical drug production areas in the facility.[6]

26.     On October 27, 2023, the FDA issued a warning to consumers to immediately stop using the contaminated products due to the potential risk of eye infections that could result in partial vision loss or blindness.[7]

27.     Of the contaminated products, nine of them were found to be manufactured, marketed, and sold by Defendant.[8]

28.     Defendant is responsible for selling the 10 ml Propylene Glycol 0.6% Lubricant Gel Drops NDC: 76168-714-10 to Plaintiff.

---

[6] https://www.fda.gov/drugs/drug-safety-and-availability/fda-warns-consumers-not-purchase-or-use-certain-eye-drops-several-major-brands-due-risk-eye
[7] *Id.*
[8] *Id.*

5



29.     Defendant also sold the following recalled Lubricant Eye Drops:

♦   Lubricant Eye Drops 15 ml (single pack) Carboxymethylcellulose Sodium 0.5%

NDC: 76168-702-15



6

- Lubricant Eye Drops 15 ml (twin pack) Carboxymethylcellulose Sodium 0.5% NDC: 76168-702-30

- Lubricant Gel Drops 15 ml (single pack) Carboxymethylcellulose Sodium 1% NDC: 76168-704-15



- Lubricant Gel Drops 15 ml (twin pack) Carboxymethylcellulose Sodium 1% NDC: 76168-704-30

- Multi-Action Relief Drops 15 ml Polyvinyl Alcohol 0.5%, Povidone 0.6%, and Tetrahydrozoline Hydrochloride 0.05% NDC: 76168-706-15



7

♦ Lubricant Gel drops 10 ml Polyethylene Glycol 400 0.4% and Propylene Glycol 0.3% NDC: 76168-712-10



♦ Lubricant Eye Drops 10 ml (twin pack) Propylene Glycol 0.6% NDC: 76168-714-20

♦ Mild Moderate Lubricating Eye Drops 15 ml (single pack) Polyethylene Glycol 400 0.25% NDC: 76168-711-15



Case 7:23-cv-01660-BO-RN   Document 5   Filed 02/02/24   Page 8 of 25

30.     Shortly after the FDA recommendation, Defendant allegedly removed the contaminated products from their retail store shelfs and website.[9]

*Plaintiff's Experience with the Recalled Products*

31.     On October 4, 2023, Plaintiff had eye surgery to tighten up the muscles in her eyelid.

32.     To help give her relief after the surgery, Plaintiff purchased CVS Health Lubricant Eye Drops 10 ml (single pack) (Propylene Glycol Eye Drops 0.6%) from her local CVS Pharmacy retail store in Carolina Beach, North Carolina

33.     The Product was intended to lubricate Plaintiff's eyes to ease redness, itching, and dry eyes.

34.     Plaintiff purchased the Product because she believed it to be a safe and trustworthy product, as it was marketed and promoted by Defendant.

35.     However, Defendant's over the counter lubricating drops subject consumers to an unreasonable risk of infection and potential vision loss or blindness.

36.     Plaintiff and the Putative Class members would not have purchased this Product, or would have paid significantly less, had they known of the truly dangerous nature and risk of using Defendant's Product.

37.     Defendant knew of the purposes in which Plaintiff and the Putative Class members intended to use the lubricating drops.

38.     Defendant also knew that Plaintiff and the Putative Class members would be relying on Defendant's skill in producing a safe and suitable product.

---

[9] *Id.*

9

39.     Unfortunately, Plaintiff and Putative Class members were deprived of their benefit of the bargain and was monetarily harmed by Defendants' inoperable, unusable, nonconforming, and dangerous Product.

## CLASS ALLEGATIONS

40.     Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks class certification on behalf of the class defined as follows ("Nationwide Class").

**Nationwide Class:** All persons in the United States who Purchased Defendant's Recalled Eye Drop Products prior to October 25, 2023

.

41.     Excluded from the Class are any Defendant's parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

42.     The Nationwide Class shall be referred to as the "Class." Proposed members of said Class will be referred to as "Class Members," or otherwise reference as "members of the Class."

43.     **Numerosity:** The members of the Class are so numerous that joinder of all members of the Class is impractical. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers who have been damaged by Defendant's conduct as alleged herein. The precise size of the Class is currently unknown to Plaintiff.

44.     **Typicality:** Plaintiff's claims are typical to those of all Class Members because members of the Class have been similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

45.     **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class

10

members. The claims of Plaintiff and all prospective Class Members involve the same alleged defect. The common legal and factual questions include the following:

a.  Whether Defendant's products are defective and/or unsafe;

b.  Whether Defendant owed a duty of care to Plaintiff and the Class;

c.  Whether Defendant knew or should have known that the Products were defective and/or otherwise unsafe;

d.  Whether Defendant wrongfully represented that its Products are operable for their ordinary intended use;

e.  Whether Defendant's omissions are true, misleading, or objectively reasonably likely to deceive consumers;

f.  Whether the alleged conduct constitutes violations of the law asserted;

g.  Whether Defendant's alleged conduct violated public policy;

h.  Whether Defendant's representations in advertising, warranties, packaging, and labeling are false, deceptive, and/or misleading;

i.  Whether a reasonable consumer would consider the Products not working as intended, given the danger of contamination to the Products;

j.  Whether the Defendant was unjustly enriched because of its marketing, advertising, and sale of the Products;

k.  Whether Defendant breached their express warranties;

l.  Whether Defendant breached their implied warranties;

m.  Whether certification of the Class proposed herein is appropriate under Fed. R. Civ. P. 23;

n. Whether Plaintiff and the Class Members are entitled to damages and/or restitution and the proper measurement of that loss; and

o. Whether an injunction is necessary to prevent Defendant from continuing to market and sell and product.

46. **Adequacy:** Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and has the resources and abilities to fully litigate to protect the interests of the Class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interest in those of the Class, nor is Plaintiff subject to any unique defenses.

47. **Superiority:** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial determent suffered by Plaintiff and the individual Class Members is relatively small compared to the burden and expense that would be entitled by individual litigation of their claims against Defendant. It would thus be virtually impossible for plaintiff and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

48. The Class may also be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

49.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Products that may be defective and dangerous. Further, Plaintiff seeks for Defendant to provide a full refund of the purchase price of the Products to Plaintiff and the Class Members.

50.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that was taken from Plaintiff and Class Members. Unless a Class-wide injunction is issued, Defendant may continue to commit the violations alleged and the members of the Class, as well as the general public, will continue to be misled and placed in harm's way.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of North Carolina's Implied Warranty: Fitness for Particular Purpose Statute**
**(N.C. Gen. Stat. Ann. § 25-2-315)**
**(On Behalf of Plaintiff and the Class)**

51.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

52.     Defendant sells a wide variety of products in their retail stores and online that are intended to be used for particular purposes.

53.     Defendant would know or at least have reason to know that the lubricating eye drops are purchased by buyers such as Plaintiff to be used on their eyes to provide lubrication and relief from common eye irritations.

54.     Plaintiff relied on Defendant's skill and judgement by trusting that the Defendant would offer only the best and safest products to consumers.

55.     Due to being a merchant of healthcare and wellness products, beauty products, and personal care products, it is reasonable that Plaintiff would rely on and trust the Defendant's

13

judgment that the Products are of a high quality and will alleviate the particular purpose for which they were purchased.

56. The knowledge and expertise of Defendant combined with the reliance by Plaintiff create an implied warranty that the Products will be fit for its particular purpose.

57. As the Products are not safe to be used, Defendant has violated the implied warranty under N.C. Gen. Stat. § 25-2-315.

**SECOND CAUSE OF ACTION**
**Violation of North Carolina's Implied Warranty of Merchantability Statute (N.C. Gen. Stat. Ann. § 25-2-314)**
**(On Behalf of Plaintiff and the Class)**

58. Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

59. As stated in N.C. Gen. Stat. § 25-2-314, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

60. Defendant is a provider of healthcare and retail pharmacy services. Defendant offers prescription medications, healthcare and wellness products, beauty products, and personal care products.

61. Lubricating eye drops, such as the Products, are a product that the Defendant is a merchant with respects to good of that kind, and sells the Products as well as similar goods of those kind.

62. Therefore, an implied warranty does exist under North Carolina law.

63. When an implied warranty exists, the goods to be merchantable must be at least such as:

a. pass without objection in the trade under the contract description; and

14

b.  in the case of fungible goods, are of fair average quality within the description; and

c.  are fit for the ordinary purposes for which such goods are used; and

d.  run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and

e.  are adequately contained, packaged, and labeled as the agreement may require; and

f.  conform to the promises or affirmations of fact made on the container or label if any.[10]

64.  Defendant's Products are well below the fair average quality within the description of the goods. The descriptions do not state that the product is contaminated with bacteria, nor that the Products are dangerous even when used in the intended and reasonably foreseeable manner.

65.  The Products are not fit for their ordinary purposes, because as mentioned, their ordinary purpose would render them dangerous to use.

66.  The Products also do not conform to the promises or affirmations of fact made on the container or label, because the Product must be sterile in order to conform to the promise on the label, and neither the container or label mention the presence of bacteria.

67.  Therefore, the Products are in violation of N.C. Gen. Stat. § 25-2-314.

**THIRD CAUSE OF ACTION**
**Violation of North Carolina's Express Warranty by Affirmation, Promise, Description, or Sample Statute (N.C. Gen. Stat. Ann. § 25-2-313)**
**(On Behalf of Plaintiff and the Class)**

68.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

_____
[10] N.C. Gen. Stat. § 25-2-314(2).

15

69.     Defendant's description of the Products state that the product is safe to use.

70.     The description states that when used in the intended manner, the Products are intended to safely lubricate the user's eyes.

71.     This description is made part of the basis of the bargain that creates an express warranty that the goods shall conform to the description.[11]

72.     Plaintiff would not have purchased and relied on the Product but for its description as part of the bargain of the Product.

73.     As it is not necessary that any formal words such as "warrant" or "guarantee" are used, even with specific intention to make a warranty[12], the Defendant, whether by intention or not, created an express warranty that the Products would conform to that as was stated on the packaging.

74.     As the Products have not conformed to as was stated on the package, and are in fact much more dangerous than was described, Defendant has violated the Product's express warranty under North Carolina law.

## FOURTH CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

76.     Through their marketing, advertisements, and sale of the Product, Defendant created an offer to Plaintiff.

77.     In specific, Plaintiff was offered to receive a product that was safe to use for the lubrication of the eye in exchange for the purchase price of Defendant's Product.

---

[11] N.C.Gen.Stat. § 25-2-313(1)(b).
[12] N.C.Gen.Stat. § 25-2-313(2).

16

78.    Plaintiff accepted and performed her obligation under the offer, by paying the price of labeled on the product as consideration.

79.    Defendant failed to perform its obligation under the contract in that Defendant failed to provide a product that was safe to use for its intended use.

80.    Plaintiff and the Class have been damaged as a direct and proximate result of Defendant's breach.

81.    Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## FIFTH CAUSE OF ACTION
### Design Defect
### (On Behalf of Plaintiff and the Class)

82.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

83.    Defendant engaged in the development, manufacture, marketing, packaging, labeling, sale, and distribution of the Product in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

84.    Plaintiff is an expected user or consumer of the Product.

85.    At all times, Defendant held final design approval authority for the Product.

86.    The Product was conveyed in a condition not contemplated by reasonable persons among those considered expected users of consumers of the Product.

87.    Safer, feasible and suitable alternatives to the Product that was available to Defendant have existed at the time of manufacture and conveyance that do not present the same frequency or severity of risks as do the Product.

17

88.     Defendant caused the Product to enter the stream of commerce and to be sold through online and brick and mortar retailers where consumers such as Plaintiff purchased the Product.

89.     The Product reached consumers, including Plaintiff, without any change in the condition in which it was manufactured and sold by Defendant and/or was otherwise released into the stream of commerce.

90.     The ordinary consumer would not consider the Product sufficiently safe given the risks and dangers of the Product.

91.     The foreseeable risks exceed and outweigh the benefits Defendant purports the Product to provide.

92.     Defendant knew or should have known Plaintiff could foreseeably suffer injury as a result of the defective design of the Product.

93.     Plaintiff used the Product in the manner normally intended, recommended, and marketed by Defendant.

94.     The Product failed to perform safely when used by Plaintiff in its ordinary use; since the presence of bacteria in the Products made them unreasonably dangerous and thus worthless.

95.     The Product contained a defect when they left the possession of Defendant. Specifically, the Product differs from Defendant's intended result because they were contaminated with bacteria, and Defendant failed to test the Product properly and adequately for the presence of bacteria before distributing it.

96.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class sustained economic, noneconomic losses, and other damages.

## SIXTH CAUSE OF ACTION
### Manufacturing Defect
### (On Behalf of Plaintiff and the Class)

97.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

98.     Defendant knew or should have known that if the Products were negligently manufactured, the Products proper use would have an unreasonable risk of harm to the user since it is intended to be directly in the users' eyes.

99.     Defendant owes its consumers, such as Plaintiff, a reasonable duty of care in the manufacturing of its Products to ensure the Products do not have an unreasonable risk of harm when used in the proper way.

100.     The Products suffers from a manufacturing defect due to the contamination of bacteria during the manufacturing process, which creates a danger to users, such as Plaintiff, when the Products are used in the proper and intended manner.

101.      Defendant failed to exercise due care in its manufacturing of its Products, by failing to make reasonable tests and inspections to discover latent hazards involved in the use of its Products.

102.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class sustained economic, noneconomic losses, and other damages.

## SEVENTH CAUSE OF ACTION
### NC Gen. Stat. 99B-5
### Failure to Warn
### (On Behalf of Plaintiff and the Class)

103.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

19

104.     At all relevant times, Defendant was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing the Product in the regular course of business.

105.     Defendant had a duty to exercise reasonable care in the advertising and sale of the Product, including a duty to warn and instruct Plaintiff and Class Members of the dangers associated with the use of the Product that were known or should have been known to Defendant at the time of sale of the Product to Plaintiff and the Class.

106.     Defendant knew or should have known that the Product was contaminated with a dangerous bacterium.

107.     At the times of sale and use, the Products were in an unreasonably dangerous and defective condition because they failed to contain adequate and proper warnings regarding the presence of bacteria, and the dangers therein, within the bottles and/or packaging of the Product.

108.     Defendant knew that the risk of exposure to bacteria was not readily recognizable to an ordinary consumer and that consumers would not reasonably inspect the Product for bacteria.

109.     Defendant did not give adequate warnings to Plaintiff that the Product was contaminated with bacteria, or about the dangers of the presence of bacteria in the Product.

110.      Plaintiff was justified in her reliance on Defendant's labeling, packaging, marketing, promotion, and advertising of the Product.

111.     Therefore, the Products were in an unmerchantable state when they left possession of the Defendant.

112.     As a direct and proximate result of Defendant's failure to provide Plaintiff with sufficient or adequate warnings, Plaintiff was not adequately informed of the potential dangers and/or defects of the Products.

113.    Had Plaintiff had notice or a warning that the Products were contaminated with bacteria, she would not have purchased or used the Product at all.

114.    Even when used in the ordinary and reasonably foreseeable manner, Defendant's Products were unreasonably dangerous to consumers and should have included an adequate warning.

115.    As a direct and proximate result of Defendant's conduct, Plaintiff sustained economic and noneconomic losses, and other damages.

**EIGHTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Class)**

116.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

117.    Through their advertising and other materials put forth in the course of their regular business, Defendant negligently made false representations to Plaintiff and the Class concerning the function, operability, validity, and safety of the contaminated Products.

118.    Defendant has a duty to use reasonable care when relaying information to potential consumers and the general public about their Products, that the information is accurate and truthful.

119.    Defendant did not practice reasonable care in the above-mentioned design, creation, production, sale, and marketing of the Product. If reasonable care was used, the Products would not have been contaminated, or would not have been represented as being safe to use.

120.    Defendant knew that such statements would be relied upon by Plaintiff and the Class, given that the statements of safety in use is a crucial reason for purchasing the Product.

121.    Plaintiff and the Class would not have purchased the Product without such statements and assertations put forth by Defendant.

21

122.    Defendant intended that Plaintiff and the Class rely on the representations made by Defendant regarding the Product.

123.    Plaintiff justifiably relied upon such representations and omissions to her detriment as she suffered damages.

124.    By reason thereof, Plaintiff and Class Members have suffered damages in an amount to be proven at trial.

125.    Due to Defendant's conduct, Plaintiff was damaged by Defendant in that Plaintiff has been deprived of her benefit of the bargain and loss of purchase price.

## NINTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

126.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

127.    Plaintiff and the Class conferred a measurable benefit on the Defendant in the form of monies paid in exchange for the Defendant's Products.

128.    Plaintiff and the Class conferred this benefit to receive an operable and safe to use lubricating eye drop product.

129.    The benefits conferred by Plaintiff and members of the Class were not a donation to Defendant, nor were the benefits conferred officiously or gratuitously.

130.    Defendant knowingly and consciously accepted the benefits in the form of monies paid by the plaintiff and members of the Class when they purchased the Products.

131.    Plaintiff and the Class paid compensation for Products that were properly functioning, Products whose sole function was providing safe eye lubrication. Instead, they

received something entirely different and unusable given the inherently dangerous nature of the Products.

132.    Without reimbursement of the funds to Plaintiff and the Class, Defendant's retention of the funds is unjust.

133.    Plaintiff and the Class are entitled to recover from Defendant all wrongfully collected and improperly retained by Defendant, plus interest thereon.

### TENTH CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

134.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

135.    Defendant has a duty to make safe and ensure its Products offered for sale to consumers are safe and operable, and free from dangerous contaminants.

136.    Defendant breached this duty by producing, marketing, and selling dangerous inoperable Products.

137.    Defendant's breach of this duty is the actual and proximate cause of Plaintiff's injury, as Plaintiff has paid full value for a defective and inoperable product.

138.    As a result of the injury, Plaintiff was damaged in that she lost her benefit of the bargain and suffered economic loss through the retention of her funds paid for the Product.

139.    But for Defendant's production, marking, and sale of the dangerous, inoperable Products, Plaintiff and the Class would not have been injured.

140.    It is foreseeable that producing an inoperable and unsafe, or otherwise ineffective Product would cause damages to Plaintiff and the members of the Class who paid full value for a product that was intended to be safe and effective to use.

23

141.   Plaintiff and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available thereunder for Defendant's negligent failure to deliver the bargained for Products.

## **PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prayer for judgment against Defendant as to each and every count, including:

a.   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

b.   An order enjoining Defendant from selling the Products;

c.   An order enjoining Defendant from suggesting or implying that the products are effective for their intended purpose of safely granting eye lubrication and relief;

d.   An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

e.   An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

f.   An order requiring Defendant to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post- judgment interest thereon;

g.  An order requiring Defendant to disgorge all ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

h.  An order requiring Defendant to pay all actual, punitive, and statutory damages permitted under the counts alleged herein;

i.  An order awarding attorney's fees and costs to Plaintiff and Class; and

j.  An order providing for all other such equitable relief as may be just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues so triable.


Dated: February 2, 2024


Respectfully Submitted,

*/s/ Blake G. Abbott*
Paul J. Doolittle (Special Appearance Forthcoming)
Blake G. Abbott (Bar No. 57190)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Fax: 843-494-5536
Email:
Blake.abbott@poulinwilley.com
Paul.doolittle@poulinwilley.com

25