IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH RUFFIN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>CVS Pharmacy, Inc.,<br><br>Defendant. | Case No. 7:23-cv-01660-BO-RN |

## AMENDED ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In this lawsuit, Plaintiff Deborah Ruffin asserts economic loss damages on behalf of herself and a proposed nationwide class of customers who purchased various store-brand over-the-counter eye drops (the "At-Issue Products," as described in Sec. 1.31 of the Settlement Agreement, at ECF No. 25) from Defendant CVS Pharmacy, Inc. ("CVS").[1] Although CVS did not manufacture the At-Issue Products, Ruffin alleges that CVS sold the At-Issue Products under its store-brand label until Fall 2023, when an FDA inspection of the manufacturing facility led to the recall of the manufacturer's products—including those sold by CVS and other major retailers.

Following iterative discussions about the parties' claims and defenses and targeted discovery, the parties engaged a third-party mediator—the Hon. Diane Welsh—to facilitate their discussions and help the parties evaluate whether resolution of Ruffin's claims on a class-wide basis was possible. After a day-long, arm's-length mediation, the parties reached an agreement-

---

[1] The "At-Issue Products" are any product that CVS sold during the Class Period with any of the following National Drug Codes (NDCs): 76168-702-15; 76168-702-30; 76168-704-15; 76168-704-30; 76168-706-15; 76168-711-15; 76168-712-10; 76168-714-10; and 76168-714-20.

in-principle for a nationwide class settlement under which CVS would provide $1 million dollars to fund a class-wide settlement of all economic loss claims for members of the defined Settlement Class. As part of the settlement, CVS also agreed to injunctive relief by abstaining from directly or knowingly purchasing eye drop products from the manufacturer at issue, Kilitch Healthcare India., Ltd ("Kilitch") under its current ownership for the next ten years.

The Court granted preliminary approval of the Settlement Agreement on April 25, 2025. ECF No. 27. In that order, the Court found that the Settlement Class satisfies certification requirements for settlement purposes under Rule 23(a) and (b), specifically those of numerosity, commonality, typicality, adequacy, commonality, predominance, and superiority. *Id.* ¶ 10. It also held that the proposed notice plan "meets the requirements of Due Process" and would provide "valid, due, and sufficient notice to all persons" of their rights and obligations under the Settlement Agreement. *Id.* ¶ 12. Finally, for purposes of the notice and claims processes leading up to the final approval hearing, the Court also issued initial findings that "the Settlement Agreement is fair, reasonable, and adequate, within the range of possible approval, and in the best interests of the Settlement Class," *id.* ¶ 4; and appointed Ruffin and her counsel as class representative and class counsel, respectively, *id.* ¶ 8.

The preliminary approval order set forth a schedule for the notice and claims process, as well as briefing in preparation for an August 18, 2025, final approval hearing. *Id.* at 9–10. The parties subsequently moved to modify the preliminary approval to incorporate (1) a protective order to shield class members' personal information in customer loyalty data used for class notice and (2) an extension of the class notice and claims period. ECF No. 28. On June 12, 2025, the Court granted the parties' joint motion and put in place deadlines for completion of the proposed

notice plan (by July 18); submission of all claims, opt-outs, and objections (by September 18); and filing of the present motion in support of final approval (by October 14).

Since then, the parties have executed notice through direct outreach, plus in-store, online, and publication notice. The response from the class was overwhelmingly positive: the Settlement Administrator received 34,745 claims that do not exhibit substantial evidence of fraud, but only seventeen opt-out requests and, at most, two objections (both of which are non-meritorious, as discussed below).

Ruffin filed her Unopposed Motion for Final Approval of Class Action Settlement ("Unopposed Motion for Final Approval") on October 13, 2025, ECF No. 42, and the Court held an in-person fairness hearing on October 28, 2025.

At the fairness hearing, the Court held that the proposed cy pres candidate was not an appropriate recipient for excess funds that remain from the settlement fund following all class member compensation (if any), but it did not otherwise express concerns with the fairness, reasonableness, or adequacy of the Settlement Agreement. Pursuant to Sections 2.4 and 8.1(j) of the Settlement Agreement, the parties may stipulate to non-material modifications to the Settlement Agreement subject to the Court's approval, including changing the cy pres recipient. ECF No. 25 at 12, 22. The parties subsequently met and conferred regarding an alternative cy pres recipient, and they agreed to designate the Wounded Warrior Project.

The Court approves The Wounded Warrior Project as an appropriate cy pres recipient.[2] Additionally, because the Settlement Agreement "notified Class Members that a cy pres recipient

---

[2] The Wounded Warrior Project has programs for assisting veterans with disabilities, including vision-related disabilities. Veterans disproportionately suffer from ailments for which eye drops are helpful. *See* Modi, Yasha S., et al. "Ocular Surface Symptoms in Veterans Returning from Operation Iraqi Freedom and Operation Enduring Freedom." *Investigative Ophthalmology & Visual Science* 55.2 (2014): 650-653 (noting the "high prevalence of DES [dry eye syndrome] in

3

would receive any unclaimed funds" and included terms that enabled changes in the cy pres recipient subject to court approval, the Court holds that "additional notice regarding the new cy pres recipient is not necessary." *See Hesse v. Godiva Chocolatier, Inc.*, No. 1:19-cv-972, 2022 WL 22895466, at *8 (S.D.N.Y. Apr. 20, 2022); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 331 (N.D. Cal. 2018) ("notifying the Class [was] not required" because "changes to the cy pres distribution … are directly beneficial to the Class.").Having considered Ruffin's Unopposed Motion for Final Approval and the supporting declaration, the oral agreement presented at the October 28, 2025 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the fairness hearing, and for good cause shown, the Court hereby grants Ruffin's Unopposed Motion for Final Approval, and finally approves the settlement as set forth in the parties' Settlement Agreement, ECF No. 25, subject to the terms stated below.

## I.     APPROVAL OF THE SETTLEMENT AGREEMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for a proposed class action settlement to ensure that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a proposed settlement is "fair, reasonable, and adequate," courts in the Fourth Circuit undertake a bifurcated analysis, employing two sets of factors from *Jiffy Lube*. *See Ciarciello v. Bioventus, Inc.*, 760 F. Supp. 3d 377, 395 (M.D.N.C. 2024) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d. 155, 158 (4th Cir. 1991) ("*Jiffy Lube*")).

Rule 23(e) also directs the Court to consider a list of "core concerns," which focus on the adequacy of the class's representatives, the existence of arm's length negotiations, the adequacy

---

US veterans"); Galor, Anat, et al. "Prevalence and Risk Factors of Dry Eye Syndrome in a United States Veterans Affairs Population." *American Journal of Ophthalmology* 152.3 (2011): 377-384 (a "large proportion of both men and women" in Veterans Affairs cohort "has a diagnosis of DES").

4

of relief for class members, and the equitable treatment of class members. *See* Fed. R. Civ. P. 23(e)(2); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (explaining that the "core concerns" under Rule 23(e)(2) should not "displace ... any factor" under preexisting standards but "should guide the decision whether to approval the proposal.").

It is in the best interests of the class that the Court approve the Settlement Agreement, which will provide quick and effective relief for purchasers of the at-issue eye drop products. As this Court ruled in the preliminary approval order, the Settlement Agreement meets all the requirements of Rule 23(a) and (b)(3) and the notice plan meets all applicable laws, including Due Process. ECF No. 27 ¶¶ 10, 12. Subsequent events have confirmed those findings: the parties executed the notice plan pursuant to the Court's direction, and the response of the class has been overwhelmingly positive. Examination of the Settlement Agreement under the Fourth Circuit's *Jiffy Lube* tests, and in light of Rule 23(e)(2)'s "core concerns," demonstrates why the Court grants final approval here.

### A. THE SETTLEMENT IS FAIR.

In arriving at a conclusion for fairness, courts in the Fourth Circuit apply a four-factor test: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of law at issue. *Jiffy Lube*, 927 F.2d at 158-159. "Where a settlement is the result of genuine arm's-length negotiations, there is a presumption that it is fair." *See Gaston v. LexisNexis Risk Sols. Inc.*, No. 5:16-cv-00009, 2021 WL 2077812, at *5 (W.D.N.C. May 24, 2021) (citations omitted).

Here, the Settlement Agreement is the result of careful mediation between experienced counsel after exchanging relevant informal discovery; it therefore meets Rule 23(e)'s "fairness" requirement.

5

### 1. *Posture of the Case*

"The fairness analysis is intended primarily to ensure that a settlement is reached as a result of good faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015). Early settlements may "rais[e] questions of possible collusion among the settling parties." *Jiffy Lube*, 927 F.2d. at 159. But courts' concern about possible collusion in settlements reached at an early stage in the litigation is "offset by other factors" including where the parties engage in "informal discovery" and both sides make "substantial concessions" through negotiations. *Id.*

The instant civil action has been pending for nearly two years. Although the parties have not conducted formal discovery or engaged in motion practice during this time, the Court recognizes that the parties have engaged in informal discovery and settlement discussions almost since the outset of the litigation. Included in these discussions was a formal, arm's-length mediation with an experienced neutral, former federal magistrate judge, the Hon. Diane Welsh. Based on these efforts, the Court finds that the posture of this case supports a finding of fairness.

### 2. *Extent of Discovery*

As stated above, the parties did not engage in formal discovery, but their pre-mediation negotiations included targeted, informal discovery to address the scope of potential class-wide damages. Prior to their mediation, the parties also exchanged mediation statements that laid out case themes, likely arguments and defenses, and anticipated fact development to be demonstrated through discovery. Through this process, the parties developed an understanding of both sides' positions, strengths, and risks in this litigation that typically would be achieved only through extensive discovery and briefing efforts.

This method of informally exchanging key information and discussing the parties' case themes weighs in favor of final approval. *See Jiffy Lube*, 927 F.2d. at 159 (plaintiff obtaining

6

"evidence ... through informal discovery" weighed in favor of final approval, even "early in the litigation [when] no formal discovery had occurred"). Doing so serves to protect the class's interests, because it "facilitate[s] settlement negotiations while limiting expenses." *Alliance Ophthalmology, PLLC v. ECL Grp., LLC*, No. 1:22-cv-468, 2024 WL 3203226, at *11 (M.D.N.C. June 27, 2024) (granting final approval where "[t]he parties did not engage in formal written discovery or depositions but worked cooperatively to conduct informal discovery" prior to settlement negotiations). This factor therefore weighs in favor of a finding of fairness.

### 3. *Circumstances Surrounding the Negotiations Between the Parties*

Courts view negotiations conducted through a third-party mediator, with multiple demands and counteroffers exchanged, as evidence of a fair settlement. *See Ciarciello,* 760 F. Supp. 3d at 396 (that "the parties engaged in negotiations with an independent mediator" was one factor that "supports a finding of fairness"). Here, the parties engaged in significant informal negotiations, eventually culminating in a day-long, formal mediation with the Hon. Diane Welsh, a former federal magistrate judge who has spent two decades as a JAMS mediator, and who has extensive experience in negotiating and overseeing settlement of mass torts and class actions. The nature and extent of the parties' negotiation, both on their own and through an established mediator, further support a finding of fairness.

### 4. *Experience of Counsel in the Area at Law*

Counsel for both sides have extensive experience in products and class action litigation, further demonstrating the fairness of the Settlement Agreement.

Based on all of these factors, the Court finds that the Settlement Agreement satisfies the "fairness" standard set forth in *Jiffy Lube*. Experienced counsel engaged in informal, targeted discovery and held frank discussions about the case leading up to mediation through a third-party

7

neutral. These facts demonstrate the fairness of the Settlement Agreement and the effort required to achieve this outcome for the Settlement Class.

### B. THE SETTLEMENT IS ADEQUATE.

Regarding the adequacy of a settlement, courts in the Fourth Circuit look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Ciarciello*, 760 F. Supp. 3d at 396 (quoting *Jiffy Lube*, 927 F.2d at 159). The Settlement Agreement is adequate under these factors, and it provides class members prompt and proportionate relief without the risks or delay inherent in prolonged class action litigation.

#### 1. *The Relative Strength of the Parties' Claims and Defenses*

As the strength of Ruffin's case and the difficulties of proof or defenses go hand-in-hand, the Court will evaluate them in tandem. The consideration of the relative strength of the Ruffin's case on the merits necessarily involves a consideration of "the complexities and uncertainties" of class action litigation and the fact that the associated expenses of such litigation "make it appropriate for plaintiffs to compromise their claims pursuant to a reasonable settlement." *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 245 (S.D. W. Va. 2005).

"A trial necessarily involves the risk that the Plaintiffs and the Class would obtain little or no recovery." *Id.* (quoting *Weiss v. Mercedes-Benz,* 899 F. Supp. 1297, 1301 (D.N.J. 1995)). Substantial defenses available to a plaintiff's claims weigh in favor of finding a settlement adequate. *Id.* In the instant case, in this early stage of the litigation, CVS presented a myriad of defenses and obstacles to the successful completion through trial of Ruffin's claims. As Ruffin

8

recognizes, there is no certainty in litigation, and CVS has raised colorable defenses that have the potential to limit or prevent recovery of her asserted claims on a class-wide basis.

CVS has raised defenses that, if upheld, would jeopardize Ruffin's ability to seek class-wide relief. Those defenses, along with the inherent uncertainty in litigation, weigh in favor of a finding of adequacy.

### 2. *The Anticipated Expenses and Duration of Litigation*

The early nature of this settlement, which was negotiated prior to conducting costly discovery or motion practice, favors members of the Settlement Class, as litigation expenses have been limited to date. Were this litigation to proceed, however, the cost of litigating—including discovery costs and expert fees—could be substantial, particularly in a case of this nature involving complex class damages issues, product quality issues, and alleged health risks.

Litigating these claims would be a lengthy process, involving protracted written discovery, depositions, motions to dismiss, motions for summary judgment, and motions for class certification. Completion of these matters could take several months or even years and would be an expensive proposition for each side. By contrast, at this early stage of the litigation, obtaining a reasonable settlement after informal discovery and a mediation preserves settlement proceeds for the benefit of the Settlement Class Members. This factor also favors a finding of adequacy and final approval.

### 3. *Solvency of the Defendant*

The solvency of the Defendant is not at issue, so this factor is neutral. *See Birks v. Small Community Specialists, L.L.C.*, No. 8:23-cv-837, 2024 WL 5344437, at *5 (D. Md. Dec. 10, 2024) ("Defendants appear to be solvent, so the fourth *Jiffy Lube* adequacy factor is neutral.").

### 4. *Degree of Opposition to the Settlement*

The members of the Settlement Class overwhelmingly support the terms of the Settlement Agreement. After a mixture of direct and indirect notice, as approved by the Court in its preliminary approval order, the Settlement Administrator indicated the receipt of 34,745 non-fraudulent claim forms.

In contrast, the record reflects only seventeen opt-outs and, at most, two objections.[3] These numbers represent an opt-out rate of less than 0.05% and an objection rate of less than 0.006% (or 0%, as there are no *meritorious* objections)—a miniscule fraction of a percent of the members who indicated their support for the settlement by filing a claim.

Where "there are relatively few objections ... and only a small percentage of class members ... opting out," that "supports the adequacy of the settlement." *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009)); *see also In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Marketing, Sales Practices, and Prods. Liab. Litig.*, 952 F.3d 471, 485–86 (4th Cir. 2020) ("*Lumber Liquidators*") (opt-out rate of 0.05% and objection rate of 0.006% supported final approval); *In re Wachovia Corp. ERISA Litig.*, No. 3:09-cv-262, 2011 WL 13262040, at *4 (W.D.N.C. Oct. 24, 2011) ("The small percentage of objections reflects Class members' support for the Settlement and is compelling evidence that the Settlement is adequate.").

---

[3] Prior to the close of the claims period, one class member, Mr. Marqueth Wilson moved to intervene in this litigation. ECF No. 33. Mr. Wilson's motion indicated an intention to participate in the litigation (and is therefore not an opt-out request) and did not raise any critique of the Settlement Agreement (and is therefore not an objection). The Court has denied Mr. Wilson's motion to intervene. ECF No. ___.

10

The opt-outs do not weigh against approval. Besides the relatively small number of opt-out submissions received, none indicated any discontentment with the Settlement Agreement. Indeed, the majority provided no reason for their decision.

The other responses similarly offer no obstacle to approval.

The Court does not consider the Strauss Submission, ECF No. 39, to be an objection, as Mr. Strauss indicates that he intended to join the Settlement Class and does not state an objection to the Settlement Agreement. Instead, he contends that he received his claim form on or after the close of the claim period. But the Settlement Administrator confirmed that this was the second claim form Mr. Strauss had received, and his initial claim form was sent weeks earlier under the process set forth in the notice plan. Mr. Strauss could have submitted a timely claim through the initial claim form or through the online claim process, but he did not. Because Mr. Strauss received a timely claim form, his submission does not indicate a deficiency in class notice, and the Court does not consider this concern to weigh against the adequacy of the Settlement Agreement.[4]

The Hershkoff Objection, ECF No. 40, carries no more weight. The objector complained that it would be unreasonable to require claimants submit receipts to document their purchase of the At-Issue Products. But this is based on a misreading of the Settlement Agreement and other materials provided pursuant to the notice plan. Claimants do not need to provide receipts to be eligible for compensation. As set forth in the Settlement Agreement, claimants without physical records can either (1) submit information about their customer loyalty account, through which the Settlement Administrator can try to validate the purchase in CVS's customer loyalty data or

---

[4] Even assuming arguendo that he intended to object and that there was some error associated with Mr. Strauss's mailing, specifically, a one-off instance of an errant mailing would not render the entire notice plan deficient. *See In re Mutual Funds Inv. Litig.*, No. 04-md-15863, 2011 WL 1102999, at *1 (D. Md. Mar. 23, 2011) ("Notice need not be perfect .... [r]ather, what is required is 'the best notice ... practicable under the circumstances.'") (quoting Fed. R. Civ. P. 23(c)).

(2) seek compensation through the "no proof" track, which is a common mechanism in consumer product class actions.

The Hershkoff objection is therefore premised on a misunderstanding of the Settlement Agreement itself. The short form notice and claim form both notified claimants that CVS purchase records would be used to verify purchases where possible, but that no such proof was necessary for them to receive compensation. At minimum, claimants needed to provide essential information, including the product name, quantity, and approximate date of purchase, to the best of their recollection and under penalty of perjury—from there the Settlement Administrator was empowered to assess whether the claimant has presented proof of purchase.

Where an objection reflects "misunderstanding of the terms of the settlement," the court should disregard that objection as "meritless." *In re LivingSocial Marketing & Sales Practice Litig.*, 298 F.R.D. 1, 10 (D.D.C. 2013); *see also Wilson v. EverBank*, No. 14-cv-22264, 2016 WL 457011, at *1 (S.D. Fla. Feb. 3, 2016) (an objection "based on fundamental misunderstandings of the terms of the Settlement and the law" "lacks merit"). The degree of opposition from the class is therefore minimal: only a small percentage of putative class members opted out (a small fraction of 1%) and there were no meritorious objections. In contrast, tens of thousands of members of the Settlement Class have indicated their support for the Settlement Agreement by seeking the relief it prescribes. The overwhelming support of the Settlement Class therefore weighs in favor of a finding of adequacy. *See Lumber Liquidators*, 952 F.3d at 485–86 (opt-out rate of 0.05% and objection rate of 0.006% supported finding of adequacy).

Because the Settlement Agreement's terms provide significant relief for class members while still reflecting the strengths and weaknesses of Ruffin's case, and because none of the *Jiffy*

*Lube* factors weigh against a positive finding, the Court holds that the Settlement Agreement is adequate under Rule 23(e)(2).

### C. RULE 23(E)(2)'S "CORE CONCERNS" FAVOR FINAL APPROVAL.

In addition to the prevailing *Jiffy Lube* standard in the Fourth Circuit, Rule 23(e)(2) advises courts to consider four additional concerns when deliberating final approval. These considerations also weigh in favor of final approval.

#### 1. *Ruffin and class counsel have adequately represented the class.*

In its preliminary approval order, the Court appointed Ruffin and her counsel as representatives of the class, issuing an initial finding that "Poulin Willey Anastopoulo, LLC are competent and capable of exercising the responsibilities of Class Counsel and that Plaintiff Deborah Ruffin will adequately protect the interests of the Settlement Class." ECF No. 27 ¶ 8. The response of the class has confirmed that initial finding: not a single class member objected or opted out over concerns about either Ruffin or her counsel's compensation for their role in this litigation. Because Ruffin and her counsel have adequately represented the class's interests, the first Rule 23(e)(2) consideration is met.

#### 2. *The proposal was negotiated at arm's length.*

As discussed above, the Settlement Agreement was negotiated between experienced counsel through a day-long, arm's-length mediation with a retired federal magistrate judge and experienced class action mediator, the Hon. Diane Welsh. The second consideration is also satisfied.

#### 3. *The relief provided for the class is adequate.*

Rule 23(e)(2) weighs whether the class-wide relief is adequate, considering "the costs, risks, and delay of trial and appeal"; the effectiveness of the claims process for providing relief;

13

the award of any attorneys' fees; and any agreements made between the parties. *See* Fed. R. Civ. P. 23(e)(2)(C).

This Settlement Agreement provides effective relief for class members for relatively small purchases. Those who have proof of purchases that occurred shortly before the recall are entitled to a full refund. Those without proof or with older purchases will still receive compensation. Because this litigation concerns purely economic loss injuries, monetary compensation, plus CVS's commitment to injunctive relief, effectively addresses the class members' alleged injuries.

Additionally, as discussed above, the risks of further litigation here are significant—CVS has raised colorable arguments that would, if successful, severely limit class members' entitlement to relief. And complete resolution of this matter would likely take years, as the litigation proceeds through discovery, class certification, expert and summary judgment disputes, trial, and appeal. In contrast, this Settlement Agreement provides prompt relief for class members by devising a system that enables monetary relief through a one-time payment that can be issued shortly after the present case being resolved. *See* ECF No. 25 (Settlement Agreement) at § 2.2(f). The remaining considerations further weigh in favor of approval here, as the Court has already found the award of attorneys' fees to be appropriate, ECF No. 36, and there are no other agreements between the parties that would raise suspicions about the adequacy of class relief.

4. ***The proposal treats class members equitably relative to each other.***

The final consideration is also met, because the Settlement Agreement allocates awards through a predetermined damages formula based on the claimant's ability to supply proof of purchase and the likelihood that the at-issue purchase was expired or depleted by the time of recall. Rule 23(e)(2)'s "core concerns" thus counsel in favor of final approval as well.

Based on a review of the fairness and adequacy factors set forth in *Jiffy Lube* and consideration of the "core concerns" set forth under Rule 23(e)(2), the Court therefore finds that the Settlement Agreement is fair, reasonable, and adequate under Rule 23(e)(2).

\* \* \*

Having considered Ruffin's Unopposed Motion for Final Approval, the supporting declarations, the arguments presented at the October 28, 2025 fairness hearing, and the complete record in this matter, for good cause shown, the Court grants final approval of the settlement as memorialized in the Settlement Agreement. ECF No. 25.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1) As previously addressed by the Court when it granted preliminary certification of the Settlement Class, the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Procedure 23(a), and the predominance and superiority requirements of Rule 23(b)(3), have been met, warranting class certification for purposes of effectuating settlement.

2) The Court finds that sufficient notice of the proposed settlement was given, pursuant to Rule 23(e)(1), to bind all Settlement Class members. The Court finds that the executed notice was the best notice practicable to allow Settlement Class members a full and fair opportunity to consider the proposed settlement and develop a response, and that the distribution of notice was the best notice practicable under the circumstances for reaching all Settlement Class members who would be bound by the Settlement Agreement.

3) The Court has assessed the considerations of Fed. R. Civ. P. 23(e)(2), as well as the fairness and adequacy factors enumerated in *In re Jiffy Lube Sec. Litig.*, 927 F.2d. 155

15

(4th Cir. 1991). With the exception of the solvency of the defendant (which is neutral), all factors and considerations weigh in favor of finding the Settlement Agreement fair, reasonable, and adequate.

4) The Court accordingly overrules all objections and grants final approval of the Settlement Agreement, and "so orders" all of its terms which are incorporated herein. This Order incorporates by reference the definitions in the Settlement Agreement and all exhibits, addendums, stipulations, and schedules thereto.

5) The Court hereby grants final certification to the following Settlement Class for settlement purposes pursuant to Rule 23(e):

> "All persons in the United States who purchased Recalled Products during the Class Period."

Excluded from the class are (1) any Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant; (3) Persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded Persons. Also excluded from the class are the seventeen individuals who submitted timely opt-out requests, listed in Exhibit F to the Declaration of K. Kopetsky filed with Plaintiff's Unopposed Motion for Final Approval. ECF No. 43-2 at 37.

6) The Court orders the Parties, their counsel, and the Settlement Administrator to implement and consummate the Settlement Agreement in accordance with its terms and provisions.

7) If any amount remains in the Settlement Fund after all Cash Payments, Settlement Administration Expenses, Fee Award, and Service Award payments have been made (including checks distributed to Settlement Class Members that remain uncashed after

120 days), the Settlement Administrator is directed to distribute those remaining amounts pursuant to Sec. 2.4 of the Settlement Agreement, as modified by the parties' stipulation to dispense cy pres funds (if any) to The Wounded Warrior Project.

8) The Parties, without further approval from the Court, are authorized to agree to and adopt such amendments, modifications and expansions of the Settlement and all Exhibits thereto as (a) shall be consistent in all material respects with the Final Order and Judgment and (b) do not limit the rights of the Parties or Settlement Class.

9) This action is hereby dismissed with prejudice.

10) The Court retains jurisdiction over the case until all relief has been executed as provided for in the Settlement Agreement.

11) Final Judgment is hereby entered pursuant to Federal Rules of Civil Procedure 54 and 58, consistent with the terms of the Settlement Agreement.

ORDERED this 17 of Nov, 2025

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE